## Thomas Lord v. Albert Haufe.

1. EVIDENCE—*Existence of Contracts a Question of Fact.*—The question as to whether a contract existed between the parties is one of fact for the determination of the jury.

2. CONTRACTS—*Under Seal Not to be Varied by Parol.*—The terms of executory contracts under seal can not be changed by parol.

3. TRIALS—*Before the Court Without a Jury.*—Where there is a conflict of testimony in a case tried before the court without a jury, and there is sufficient competent evidence to sustain the finding, it will not

be disturbed on error or appeal for the reason that the finding is against the weight of the evidence.

Assumpsit, for rents. Trial in the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding. Finding and judgment for plaintiff. Appeal by defendant. Heard in this court at the October term, 1897. Reversed. Opinion filed June 13, 1898.

HARVEY B. HURD and SMITH, HELMER, MOULTON & PRICE, attorneys for appellant.

CRATTY BROS., JARVIS & CLEVELAND, attorneys for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

Appellant, by his lease, under seal, demised the premises 86 Wabash avenue, Chicago, to appellee for a term beginning February 1, 1891, and ending December 31, 1895, the rent being payable in monthly installments of $708.33. It also provided that Lord should make certain alterations and improvements, including a new passenger elevator and new freight elevator, to be run by hydraulic compression, with electric motor power, and an electric motor to be furnished by Lord. Appellee took possession in January, 1891, and on February 15, 1891, he ordered the Edison Electric Light Co. to provide the building with electric power to operate the elevators, and agreed to pay therefor according to certain rates per month specified in the order, but no time was fixed during which the power should be furnished. Lord had nothing to do with the contract for electric power, and did not know of it until some time after it was made. Lord furnished an electric motor, which proved unsatisfactory and was taken out and replaced by another, which was put in about July, 1891. Because of the insufficiency of the motor, appellee refused to pay rent. The matter was submitted to arbitration, the result of which was that appellee was allowed a reduction in his rent of about one and one-half months. He paid up after the arbitration, about June 3, 1891, but he also asked a reduction of his rent by the amount his electric power cost him above $50 per month, because, as he claimed, the motor consumed more electricity than it should

Lord v. Haufe.

have done.    This reduction was allowed by Lord, he claims, as a matter of grace and not because of any obligation, from time to time up to May 1, 1892, at about which date he sold his interest in the building.    Appellee claims this reduction of rent was made and allowed by Lord pursuant to a verbal contract between him and Lord to pay to appellee the excess of the cost of electric power over $50 per month during the entire term of the lease, and also that the agreement was made by Lord because appellee threatened to cancel the lease and abandon the premises by reason of trouble with the elevators, the machinery not being in order, and the excessive cost of power bills.    The checks given by appellee for rent during the period for which Lord allowed the reduction were for the amount of rent less the excess of the cost of electric power to appellee over $50 per month, most of the business being transacted with one Kirshner, who acted as agent for appellee.    We have carefully considered the evidence as to this alleged verbal agreement, and are of opinion that it not only fails to establish the agreement by a preponderance of evidence, but on the contrary, we think, the clear weight of the evidence is there was no such agreement as is claimed by appellee.    The agreement, if any was made, was with Kirshner in February or March, 1891, or in any event prior to June 3, 1891, when appellee made his first payment, being the rent due to June 30, 1891, less a rebate of one and one-half months' rent, which was allowed to him as the result of the arbitration above mentioned, and when he says he was allowed a reduction on account of excess in cost of electric power. Appellee's letter, written just one month after this first payment, and four months or more after Kirshner testifies he made the arrangement with Lord, is wholly inconsistent with any contract by which Lord was to pay the excess of cost of electric power over $50 per month.    The letter is, viz.:

"CHICAGO, July 3, 1891.

MR. THOMAS LORD:

DEAR SIR :    I hereby hand you herein a check for $645.13 for the July rent of building 86 Wabash avenue, having

deducted $63.20 for overcharge for electric power, which you agreed to furnish at the very lowest possible price. You told my engineer that you would arrange this matter with the Reedy folks, but they claim they have nothing whatever to do with the matter, as you bought the motor, yourself, which consequently releases them of the responsibility. I am told by very good authorities, such as the Reedy folks and the Edison Co., that the charge for power for running this plant should not exceed $40, or at the very most, $50 a month, which sum I shall take as a basis for settling with you, although, according to your assertion, it would be only $26 or thereabouts. I understand that the motor question could have been settled long ago if you had attended to it.

Yours respectfully,

ALBERT HAUFE."

If there had been an agreement with Lord, why did not appellee state it in this letter, instead of using the language in regard to the overcharge for electric power, viz., " which you agreed to furnish at the very lowest possible price," and why did he say he would take $50 per month as a basis for settling with Lord? He says he had no talk with Lord on the subject after June, 1891, and Kirshner says that no more was said between Lord and him after the arrangement which he testifies was made between them in February or March, 1891; that he took the checks to Lord and got a receipt for the rent less the reduction.

If there was such arrangement, why should Kirshner, as he did, on May 10, 1892, when he knew Lord had sold out, sign in his own name and also the name of appellee, a receipt to Lord for $8.33, in which he stated that it was " a favor in consideration of excess of electric power for the month of April?" There is only one reasonable answer to these queries consistent with the evidence in this record. It is that there was no agreement between appellee and Lord for the payment of this excess, but that Lord made the reductions from time to time as a matter of grace to appellee, and to avoid friction with a tenant who was paying a large rent —not because of any legal obligation on his part.

Moreover, if it be conceded that there was such an agreement as claimed by appellee, there was no consideration to support it, and it was therefore *nudum pactum*.

By the lease appellee was bound to pay his rent. The matter of damages for not getting the premises ready as agreed by the lease, was adjusted by the arbitration, allowance made therefor, and settled in the payment of rent on June 3, 1891. He was under contract with the Edison Company to pay for the cost of electric power, with which Lord had nothing to do, and which was made without any reference to the alleged agreement of Lord to pay for any excess of cost of electric power. There is no obligation under the lease which required Lord to furnish elevators which could be operated by appellee in the conduct of his business, and for the accommodation of his tenants at any specified power or cost to appellee. And even if such obligation on Lord's part existed, still the evidence is clear that any claim which appellee had in that regard was not waived or released. On the contrary, long after the alleged agreement was claimed to have been made, we find appellee making a claim for damages on account of the elevators by his letter of June 25, 1891, viz.:

" Mr. Thomas Lord :

Dear Sir: I do hereby notify you that I shall hold you responsible for any damage that I suffer through the elevators not running. Two of my tenants have notified me to-day that they will look for other quarters, as they can not stand the continuous interruption any longer. Besides it is generally known the elevators are out of order most of the time, which prevents my renting the other two lofts, for which I will also hold you responsible.

A. Haufe."

Therefore, the evidence tending to show that appellee threatened to rescind the lease and abandon the premises, since such threats were at a time after the making of the alleged agreement, could not be the basis for a consideration. That it was in fact the consideration for the agreement, can not be claimed, for the further reason that it

would be wholly inconsistent with a waiver of appellee's right in this regard for him to insist he had this claim for damages in June, 1891, and at the same time say that he waived such right in order to get Lord to pay the excess of cost of electric power.

It can not be reasonably claimed, under the evidence in this record, as is done by appellee, that he believed he had a legal right to cancel his lease; that he in good faith made that claim, and his compromise of it by yielding what he believed was his legal right, formed a good consideration for the alleged agreement with Lord, because his conduct in claiming damages in June, 1891, is wholly inconsistent with a waiver of such damages as the basis for a contract made at a previous date.    Appellee can not waive his right to damages and thereby establish a consideration for his contract with Lord, and then, when it suits his convenience, enforce the same damages against Lord.

The contention of appellee that he was induced by Lord's agreement to continue his contract with the Edison Company, which he had a right to terminate, as claimed by his counsel, is not, in our opinion, sustained by the evidence. Counsel only claim that it may be fairly inferred from the evidence that appellee continued this contract because of Lord's contract to pay the excess of cost of electric power, but we are unable to see how such inference may be drawn. It is not contended by counsel for appellee that if there was no consideration to support the agreement, that it is binding, and inasmuch as appellee was required by the terms of the lease to pay his rent, and he waived no right which he had under the lease, nor otherwise, because of the alleged undertaking of Lord, he can maintain no action upon it.

There is also another reason why appellee can not recover. The agreement, as claimed, is an attempt to vary the terms of an executory contract, under seal, by parol, which is not permissible.    It amounted to no more than a change in the amount of rent to be paid.    Chapman v. McGrew, 20 Ill. 101; Loach v. Farnum, 90 Ill. 368; Alschuler v. Schiff, 164 Ill. 298.

The trial court admitted evidence, against the objection of appellant, of conversations between Lord and appellee preliminary to the execution of the lease between them as to improvements to be placed in the building, the kind of power to be put in for operating the elevators, and the probable cost of electric power.   There is no claim that there was any fraud or mistake in making the lease.   We therefore think any such conversations were merged in the written lease afterward made, and it was error to admit the evidence in this regard.   It may be, as claimed by counsel, that this error is not cause for reversal, the trial being before the court without a jury, if there was sufficient competent evidence to sustain the finding, but, as we have seen, the other evidence was insufficient.   Appellee having failed to establish the agreement claimed by a preponderance of evidence, having failed to show any sufficient consideration to support it, and the agreement as claimed being invalid as amounting to an attempt to change the terms of an executory contract, under seal, by parol, we have thought it unnecessary to consider the other questions discussed by counsel.

The judgment will be reversed.